**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                                  **Criminal Action No: 1:12CR29**

**SAMAD MADIR HARVEY,**

    **Defendant.**

**REPORT AND RECOMMENDATION/OPINION**

On the 24th day of September 2012, came the defendant, Samad Madir Harvey, in person and by L. Richard Walker, his attorney, and also came the United States by its Assistant United States Attorney, Zelda E. Wesley, for a hearing on Defendant's Motion to Suppress Physical Evidence Based on an Illegal Traffic Stop [DE 20] and Motion to Suppress [DE 21], which motions were filed on September 13, 2012. The United States filed a single Response to both Motions on September 21, 2012 [DE 30]. The matter was referred to the undersigned United States Magistrate Judge on September 14, 2012, by United States District Judge Irene M. Keeley [DE 22]. This Report and Recommendation addresses only the first Motion [DE 20]. The second Motion [DE 21] shall be addressed in a separate Report and Recommendation.

**I. Procedural History**

On May 1, 2012, Defendant was indicted by a Grand Jury seated in the Northern District of West Virginia at Clarksburg [DE1]. He was charged with one count of Possession of a Firearm by a Convicted Felon. Defendant was arraigned on August 9, 2012. The motions before the Court were filed on September 13, 2012.

## II. Contentions

Defendant contends:

1. The Indictment is the product of an illegal traffic stop and

2. Any evidence seized as a result of the search warrant issued and executed subsequent to the traffic stop is fruit of the poisonous tree, and should be suppressed.

## III. Statement of Facts

The Court received the sworn testimony of three witnesses under oath, to wit: City of Morgantown Police Officers Jason Ammons and Kenneth Murphey, and Defendant. However, only the testimony of Morgantown Police Officer Kenneth Murphey bears on the issue raised in the motion herein considered. From the evidence and testimony presented, the Court makes the following findings of fact:

Kenneth Walker Murphey, a 4 year member of the Morgantown police department assigned to the street crimes unit, was on patrol in Morgantown, West Virginia on December 16, 2010 at 9:30 p.m. when he observed a silver Jaguar automobile being driven on University avenue without a registration plate showing. He pulled out behind the Jaguar and started following it. There as another vehicle between Officer Murphey's cruiser and the Jaguar. He followed the vehicles from Morgantown into Star City, a separate and contiguous municipality. Officer Murphy was able to conduct a traffic stop on the Jaguar when it pulled in a residential driveway at 3485 University Avenue, Star City, West Virginia.

As he approached the Jaguar Officer Murphey testified he noticed: "there was a white paper displayed in the rear window which was actually a New Jersey temporary registration card." He described what he observed as: "a registration." He further testified that [display of it in the back

window] was not a proper way to display a registration referring to Morgantown City Code 351.03. Officer Murphey testified it was his understanding that the City Code required the registration to "be clearly visible" and "the license must be affixed to the rear of the vehicle and be clearly visible." He stated he was relying on city code and not state law.

On cross-examination Officer Murphey testified to the effect that: in the City of Morgantown the temporary registration must be clearly displayed; after he stopped the Jaguar and turned his spotlight on the vehicle he saw a valid registration in the rear window; the registration he observed was not concealed by any item; the rear window was not tinted to his knowledge; and, he could read the registration when he approached the vehicle. However, he denied it was clearly displayed because he "could not see that registration as the vehicle passed me." He stated he was sitting on the side of University Avenue when he observed the silver Jaguar crossing from left to right in front of him and there "was no registration in the proper registration spot." He said he did not see anything in the Jaguar window when it drove past him even though he looked. He explained by "proper spot" he was referring to where the license plate would normally go. He explained that he went to the driver's side of the Jaguar after he saw the registration in the rear window because he had stopped the vehicle for not having the registration displayed in the proper location under the City Code and was going to give the driver a verbal warning for that infraction. At this point of the stop Officer Murphey admits he had not observed any other violation by the driver of the Jaguar or with respect to the vehicle itself under the Morgantown City Code.

Officer Murphey further testified he proceeded to the driver's side of the Jaguar and advised the driver why he was being stopped noting that there were three black males including the driver in the vehicle. He then asked the driver for his driver's license, vehicle registration card and proof

3

of insurance. The driver was unable to give his license or the other information stating that it was his uncle's car and he did not have a driver's license on him. When asked for his name and date of birth, the driver gave Officer Murphy the name of Shawn Williams and a date of birth. Officer Murphey called in the name and date of birth and was advised that there were no records found for that name and date of birth indicating the driver had given Officer Murphey a false or fictitious name. Officer Murphy then advised the driver that the name he gave was false. By the end of the traffic stop the driver gave Officer Murphey the name and date of birth of and for a Rashawn Billingsley. When Officer Murphey ran the new name and date of birth through New Jersey records, it was returned as the correct name for the driver. The check also revealed that Billingsley's driver's license had been suspended. Once the license of the driver had been determined to have been suspended, Officer Murphey placed Billingsley under arrest for driving on a suspended license and obstructing an officer. He did not give the driver a ticket for improper registration or any other driving infraction or violation.

## IV. DISCUSSION

As already stated, this decision addresses only the original traffic stop.

It is well established that the "[t]emporary detention of individuals during the stop of an automobile by the police . . . constitutes a 'seizure,'" no matter how brief the detention or how limited its purpose. U.S. v. Branch, 537 F.3d 328 (4th Cir. 2008)(citing Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.E.2d 89 (1996). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." Whren, supra, at 810, 116 S.Ct. At 1769. The issue is two-fold: "whether the officer's action was justified at its inception," United States v. Rusher, 966 F.2d 868 (4th Cir. 1968), and, if so, whether the continued

4

stop was "sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 299 (1983). The Court must evaluate "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). Based on this dual inquiry, the undersigned must first determine whether Officer Murphey's action was justified at its inception.

To justify stopping a vehicle, an officer must have reasonable suspicion that illegal activity has occurred or is occurring. See Terry v. Ohio, 392 U.S. 1 (1968). This analysis "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time. Rusher, supra, at 875. The Fourth Circuit has held that a traffic stop is valid if it is legally justified at its inception, regardless of the motive behind the stop. U.S. v. Hassan El, 5 F.3d 726 (4th Cir. 1993).

Whether there is reasonable suspicion depends on the totality of the circumstances, including the information known to the officer and any reasonable inference to be drawn at the time of the stop. United States v. Arvizu, 534 U.S. 266 (2002); United States v. Crittendon, 883 F.2d 326 (4th Cir. 1989). The legitimacy of an investigative stop thus turns on what constitutes "reasonable suspicion," which the Fourth Circuit has called "a common-sensical proposition . . . [properly] crediting the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151 (4th Cir. 1993). Accord Arvizu, 534 U.S. at 273 (permitting "officers to draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person")( internal

5

quotation omitted.) "[T]he reasonable suspicion standard defies precise definition, [but] it is less demanding than probable cause and falls considerably short of satisfying a preponderance of the evidence standard." United States v. Griffin, 589 F.3d 148 (4th Cir. 2009).

Because the intrusion created by an investigative stop is minimal, the reasonable suspicion standard is not onerous. See, e.g., United States v. McCoy, 513 F.3d 405 (4th Cir.) cert. denied, 128 S.Ct.2492 (2008); United States v. Harris, 39 F.3d 1262 (4th Cir. 1994); United States v. Turner, 933 F.2d 240 (4th Cir. 1991). On the other hand, an officer's reliance on a "mere hunch," Arvizu, supra at 274, is insufficient to establish reasonable suspicion.

Regarding vehicles in particular, "[o]bserving a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." United States v. Branch, 537 F.3d 328 (4th Cir. 2008).

Morgantown City Code Section 351.03 [Court Exhibit 1][1] provides:

Registration plates issued for vehicles required to be registered shall be attached to the rear thereof.

Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so as to prevent the plate from swinging and at a height of not less than twelve inches from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible.[2]

The credible and uncontradicted testimony in this case is that Officer Murphey did not see any registration plate whatsoever on the vehicle prior to making the traffic stop. He testified he

---

[1] Near the conclusion of Officer Murphey's testimony, at the undersigned's request, Officer Murphey produced a copy of the Morgantown ordinance: Code Section 351.03. The Court takes judicial notice of the same as being the ordinance in force and effect on the date of the traffic stop at issue.

[2] Section 351.03 mirrors West Virginia Code Section 17A-3-15.

stopped the vehicle pursuant to Morgantown City Code Section 351.03. United States v. Lender, *supra* and United States v. Branch, *supra.* The undersigned finds Officer Murphey had reasonable suspicion to justify stopping the vehicle.

Defendant argues that the Code Section does not apply because the vehicle had a temporary paper plate. He does not cite any law or case that differentiates the placement of the temporary plate from that of a regular, permanent plate. Neither could the undersigned find a City of Morgantown Code section, a West Virginia Supreme Court of Appeals decision or a Fourth Circuit decision interpreting the Code section differently than had Officer Murphey.

The Fourth Circuit, in an unpublished opinion, interpreted a similar North Carolina Code section to apply to temporary plates as well as permanent plates. U.S. v. Lucas, 322 Fed. Appx. 326, WL 795028 (4th Cir. 2009)(unpublished), cert. denied 130 S.Ct. 182, 175 L.Ed.2d 115 (October 5, 2009).[3] In Lucas, the defendant appealed from his conviction after pleading guilty to possession of a firearm by a felon. As in this case, Lucas claimed the traffic stop that led to his arrest was not supported by reasonable suspicion or probable cause, "as the placement of his temporary registration plate in the window of his vehicle rather than the bumper did not violate any North Carolina motor vehicle regulation." Id. at *1. The Fourth Circuit stated:

> In ruling on the motion to suppress, the district court noted that, pursuant to N.C. Gen.Stat. Ann. section 20-63(d)(2007), a vehicle registration plate is required to be "attached to the rear of the motor vehicle." The district court found that the statute lacked a specific definition as to what constituted the "rear" of the vehicle and conceded that placing the registration tag in the back window, as Lucas had done, could arguably constitute compliance with the terms of section 20-63(d). The district court concluded, however, that section 20-63(d) could not be read in isolation, as another motor vehicle statute, N.C. Gen.Stat. Ann. Section 20-129(d)(2007), supported the officer's interpretation as to "proper placement" of the license plate,

---

[3] Pursuant to CTA4 Rule 36(c), a copy of Lucas is attached hereto.

7

as a plate that was placed in the window could not be properly illuminated as required under section 20-129(d).

Id. at **2. The court continued:

> [W]e agree with the district court that, under the circumstances of this case, the display of the registration tag was unlawful under North Carolina law, as the tag was not properly illuminated under section 20-129(d) of the North Carolina Code. Accordingly, the fact that the tag was displayed in the rear window in a manner in which it was unreadable provided the officer with probable cause to stop Lucas' vehicle. Hence, the district court properly denied Lucas' motion to suppress.

Like the North Carolina Code section, Morgantown Code Section 351.03 requires the registration plate to be "attached to the rear" of the motor vehicle. N.C. Gen. Stat. Ann. Section 20-129(d), requires:

> One rear lamp or a separate lamp shall be so constructed and placed that the number plate carried on the rear of such vehicle shall under [normal atmospheric] conditions be illuminated by a white light as to be read from a distance of 50 feet to the rear of such vehicle.

Morgantown Code Section 345.05, entitled Tail Light; Illumination of Rear License Plate, provides:

> Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear.

Upon consideration of the credible, undisputed testimony of Officer Murphey, and in accord with the Fourth Circuit in Lucas, the undersigned finds that Officer Murphey had reasonable suspicion and sufficient justification to initiate the traffic stop. The stop was therefore legally justified at its inception and did not violate Defendant's Fourth Amendment rights. United States v. Crittendon, *supra*.

The second step in evaluating the Fourth Amendment implications of the traffic stop is whether the continued stop was "sufficiently limited in scope and duration to satisfy the conditions

8

of an investigative seizure." Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 299 (1983). The Court must evaluate "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

Defendant argues that Officer Murphey's reasonable suspicion ended once he realized there was a valid, temporary New Jersey tag on the vehicle. He was therefore not justified in detaining the driver or Defendant, or in asking for the driver's license and registration, and evidence obtained after this point must be suppressed as fruit of the poisonous tree.

Officer Murphey testified, his report indicates, and it is undisputed by Defendant that the temporary registration was in the rear window of the vehicle. It is also undisputed that Officer Murphey could not see the plate until after he effectuated the traffic stop. His report and testimony indicates that he then "approached the driver and told him why he had been stopped." He testified that there was no indication the temporary registration itself was illegal, but that it was not properly displayed pursuant to the Morgantown City Code, because it was not "affixed to the rear of the vehicle" and was not "clearly visible." He further testified that he had planned to give the driver of the vehicle a verbal warning for the violation, but subsequently discovered the driver's license had been suspended and arrested him instead for driving on a suspended or revoked operator's license, non- DUI.

The undersigned finds that, even after Officer Murphey saw the temporary registration in the rear window, the fact that the tag was displayed in the rear window in a manner in which it was not clearly visible provided him with probable cause to approach the vehicle in which Defendant was a passenger and conduct further inquiry of the driver incident to investigation of the improperly

9

displayed registration.

The undersigned United States Magistrate Judge therefore finds no Fourth Amendment violation in the traffic stop, and recommends Defendant's Motion to Suppress Physical Evidence Based on an Illegal Traffic Stop be denied.

### V. Recommendation

For the reasons herein stated, the undersigned respectfully recommends Defendant's Motion to Suppress Physical Evidence Based on an Illegal Traffic Stop [Docket Entry 20] be **DENIED**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Proposed Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such proposed findings and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 26th day of September, 2012.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE



322 Fed.Appx. 326, 2009 WL 795028 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 322 Fed.Appx. 326, 2009 WL 795028 (C.A.4 (N.C.)))

This case was not selected for publication in the Federal Reporter.
Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,

Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Shawn Maurice LUCAS, Defendant-Appellant.
No. 08-4500.

Submitted: Feb. 20, 2009.
Decided: March 26, 2009.

**Background:** Defendant pled guilty in the United States District Court for the Western District of North Carolina, Frank D. Whitney, J., to possession of firearm by felon. Defendant appealed.

**Holding:** The Court of Appeals held that police officer had probable cause to stop defendant's vehicle.

Affirmed.

West Headnotes

**Automobiles 48A ⇒ 349(5.1)**

48A Automobiles
    48AVII Offenses
        48AVII(B) Prosecution
            48Ak349 Arrest, Stop, or Inquiry; Bail or Deposit
                48Ak349(2) Grounds
                48Ak349(5.1) k. License Plates and Registration Stickers, in General. Most Cited Cases

Police officer had probable cause to stop defendant's vehicle, which had temporary registration plate placed in window of vehicle rather than bumper, for violating North Carolina law requiring a vehicle registration plate to be attached to "rear" of motor vehicle; although statute lacked specific definition as to what constituted rear of vehicle, another statute required that rear lights of vehicle illuminate registration plate, and a plate placed in window could not be properly illuminated by rear lights. U.S.C.A. Const.Amend. 4; West's N.C.G.S.A. §§ 20-63(d), 20-129(d).

**\*327** Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, District Judge. (3:07-cr-00046-FDW-1).Mark P. Foster, Jr., Law Offices of Mark P. Foster, P.C., Charlotte, North Carolina, for Appellant. Gretchen C.F. Shappert, United States Attorney; Matthew T. Martens, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

Before NIEMEYER, KING, and DUNCAN, Circuit Judges.

Affirmed by unpublished PER CURIAM opinion.

Unpublished opinions are not binding precedent in this circuit.
PER CURIAM:
    **\*\*1** Shawn Maurice Lucas appeals from his conviction and 120-month sentence after pleading guilty to possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g) and 924(e) (2006). Lucas claims that the **traffic stop** that led to his arrest was not supported by **reasonable suspicion** or probable cause, as the placement of his temporary registration **plate** in the window of his vehicle rather than the bumper did not violate any North

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

322 Fed.Appx. 326, 2009 WL 795028 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 322 Fed.Appx. 326, 2009 WL 795028 (C.A.4 (N.C.)))

Carolina motor vehicle regulation. Lucas contends the district court's interpretation of the relevant motor vehicle statute went beyond the terms of the statute itself and that the court improperly characterized the relevant issue as being whether the officer relied on a "reasonable" interpretation of that statute. After thoroughly reviewing the record, we conclude the district court did not err in denying Lucas' motion to suppress.

This court reviews the district court's factual findings underlying a motion to suppress for clear error, and the district court's legal determinations de novo. *United States v. Wilson,* 484 F.3d 267, 280 (4th Cir.2007) (citing *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). When a suppression motion has been denied, this court reviews the evidence in the light most favorable to the Government. *United States v. Uzenski,* 434 F.3d 690, 704 (4th Cir.2006).

Because an automobile stop constitutes seizure of an individual, police must comply with the Fourth Amendment's requirement "that it not be unreasonable under the circumstances." *United States v. Wilson,* 205 F.3d 720, 722 (4th Cir.2000) (quoting *Whren v. United States,* 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). An automobile stop "must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." *United States v. Hassan El,* 5 F.3d 726, 729 (4th Cir.1993) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). While there are limited circumstances under which suspicionless automobile stops are permitted, police may not carry out random or discretionary stops that are unsupported by articulable, reasonable suspicion of a violation. *Wilson,* 205 F.3d at 722.

In ruling on the motion to suppress, the district court noted that, pursuant to N.C. Gen.Stat. Ann. § 20-63(d) (2007), a vehicle registration plate is required to be "attached to the rear of the motor vehicle." The district court found that the statute lacked a specific definition as to what constituted the "rear" of the vehicle and conceded that placing the registration tag in the back window, as Lucas had done, could arguably constitute compliance with the terms of § 20-63(d). The district court concluded, however, that § 20-63(d) could not be read in isolation, as another motor vehicle statute, N.C. Gen.Stat. Ann. § 20-129(d) (2007), supported the officer's interpretation as to "proper placement" of the license plate, as a plate that was placed in **\*328** the window could not be properly illuminated as required under § 20-129(d).

**\*\*2** While neither party has brought to our attention any applicable case law regarding the specific requirements for placement of the registration plate under § 20-63(d), we note a recent decision by the North Carolina Court of Appeals, *North Carolina v. Stone,* 179 N.C.App. 297, 634 S.E.2d 244 (2006), that addresses this very matter. In *Stone,* a police officer began following a vehicle after he suspected the driver was speeding. *Id.* at 246. When the vehicle stopped in a parking lot, the officer saw that "the vehicle's license plate was displayed on the rear window instead of the bumper," at which point the officer approached the vehicle. *Id.* The trial court determined that the officer's traffic stop "was based on a 'reasonable suspicion' (if not probable cause) that the driver had been speeding ... and was not properly displaying the vehicle's license tag (in violation of N.C. Gen.Stat. § 20-63(d))." *Id.* at 247. Because the driver had been speeding and "the vehicle's license plate was displayed in the rear window, rather than on the bumper," the North Carolina Court of Appeals held that the officer had "reasonable suspicion, if not probable cause, to believe that two traffic violations had occurred." *Id.* at 248.

*Stone* supports the conclusion that placement of the tag on the rear window, alone, constituted a violation of § 20-63(d) and provided probable cause for a traffic stop. To the extent that *Stone* leaves any room for doubt, however, we agree with the district court that, under the circumstances of this case, the display of the registration tag was unlawful under North Carolina law, as the tag was not properly illuminated under § 20-129(d) of the North Carolina Code. Accordingly, the fact that the tag was displayed in the rear window in a manner in which it was

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

322 Fed.Appx. 326, 2009 WL 795028 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 322 Fed.Appx. 326, 2009 WL 795028 (C.A.4 (N.C.)))

unreadable provided the officer with probable cause to stop Lucas' vehicle. Hence, the district court properly denied Lucas' motion to suppress.

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal conclusions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED.*

C.A.4 (N.C.),2009.

U.S. v. Lucas
322 Fed.Appx. 326, 2009 WL 795028 (C.A.4 (N.C.))
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.