IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                  //   CRIMINAL ACTION NO. 1:12CR29
                                      (Judge Keeley)

SAMAD MADIR HARVEY,

        Defendant.

MEMORANDUM OPINION AND ORDER
<u>ADOPTING REPORTS AND RECOMMENDATIONS</u>

Before the Court are the defendant's two motions to suppress a firearm recovered during a search of his residence. (Dkt. Nos. 20 & 21). At a hearing on October 9, 2012, the Court heard oral argument on the motions, after which, for the reasons that follow, it **ADOPTED** the magistrate judge's Reports and Recommendations in their entirety (dkt. nos. 33 & 35), **DENIED** the first motion to suppress (dkt. no. 20), **GRANTED** the second motion to suppress (dkt. no. 21), and **SUPPRESSED** the firearm.

**I.**

On May 1, 2012, a grand jury indicted the defendant, Samad Madir Harvey ("Harvey"), for being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On September 13, 2012, Harvey filed two motions to suppress the .22 caliber pistol that is the basis of the Indictment in this case. (Dkt. Nos. 20 & 21). Pursuant to 28 U.S.C. § 636, the Court

USA v. SAMAD MADIR HARVEY                                    1:12CR29

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORTS AND RECOMMENDATIONS**

referred these motions to the Honorable John S. Kaull, United States Magistrate Judge, who conducted a suppression hearing on September 24, 2012. Later that same week, he entered two separate Reports and Recommendations ("R&Rs") recommending that the Court deny the first motion to suppress (dkt. no. 33) and grant the second motion to suppress (dkt. no. 35). The defendant filed timely objections to the first R&R on October 2, 2010 (dkt. no. 40), and, seven days later, the government filed timely objections to the second R&R (dkt. no. 47). The parties' motions are now ripe for review.

**II.**

The Court reviews <u>de novo</u> any portions of a magistrate judge's R&R to which a specific objection is made, 28 U.S.C. § 636(b)(1), but may adopt, without explanation, any of the magistrate judge's recommendations to which no objections are filed. <u>Solis v. Malkani</u>, 638 F.3d 269, 274 (4th Cir. 2011) (citing <u>Camby v. Davis</u>, 718 F.2d 198, 200 (4th Cir. 1983)). In the absence of a timely objection, the Court need "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). The failure to file specific

2

USA v. SAMAD MADIR HARVEY                                    1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS

objections to the magistrate judge's recommendations waives any appellate review of the factual and legal issues presented. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); see also Thomas v. Arn, 474 U.S. 140, 150 (1985).

### III.

The defendant's first motion to suppress challenges the constitutionality of the police officer's stop of the car in which he was a passenger. (Dkt. No. 20). In an R&R issued on September 26, 2012, Magistrate Judge Kaull found that this traffic stop complied with the Fourth Amendment and recommended that the Court deny the motion. (Dkt. No. 33 at 10). Harvey objects to the recommendation on the ground that there was no antecedent traffic violation and thus "no lawful basis" for the stop in this case. (Dkt. No. 40 at 4).

### A.

On December 16, 2010, Officer Kenneth Walker Murphy ("Officer Murphy"), a member of the Street Crimes Unit of the Morgantown Police Department, was on patrol within the city limits of Morgantown, West Virginia. (Dkt. No. 44 at 5, 19). At approximately 9:45 p.m., he observed "a silver Jaguar driving on University Avenue without a registration displayed." Id. at 5. He proceeded to

3

USA v. SAMAD MADIR HARVEY                                    1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS

follow the vehicle until he was able to conduct a traffic stop. Id. at 5-6; see also id. at 18 ("My original reason for the stop was because there was no registration."). The stop itself occurred at the house where both Harvey, one of two passengers in the silver Jaguar, and the driver resided. Id. at 6.

After the officer exited his vehicle and approached the Jaguar on foot, he noticed a piece of "white paper," which he identified as a New Jersey temporary registration card, in the rear window. Id. at 6; see also id. at 18 ("Once I turned [a spotlight] on to illuminate the vehicle, I saw that registration."). The rear window was not tinted, and the card itself was not obscured. Id. at 44. Officer Murphy testified that the display of this temporary card nevertheless violated Morgantown City Code ("MCC") § 351.03,[1] which requires a registration plate to be "clearly visible." Id. at 6. He thus proceeded with the normal incidents of a routine traffic stop,

---

[1] MCC § 351.03 provides:

> Registration plates issued for vehicles required to be registered shall be attached to the rear thereof. Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so as to prevent the plate from swinging and at a height of not less than twelve inches from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible.

USA v. SAMAD MADIR HARVEY                                    1:12CR29

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORTS AND RECOMMENDATIONS

asking the driver, later identified as Rashawn Billingsley ("Billingsley"), for his license, registration, and proof of insurance. Id. at 7, 8. Billingsley, who identified himself by a false name, was unable to produce any of the requested documents. Id. at 8.

    While Officer Murphy was questioning Billingsley, three other police officers, Officer Trump, Sgt. Knight, and Officer Jason Kevin Ammons ("Officer Ammons"), arrived at the scene to serve as backup. Id. at 26. After Officer Trump signaled to the other officers that he could smell marijuana emanating from the open windows of the car, id. at 26-27, they removed the three individuals from the Jaguar and performed a limited pat-down for weapons. Id. The officers then conducted a search of the vehicle, where they found a device for smoking marijuana, i.e., a water bong, in the trunk. Id. at 27. As this search concluded, the officers' focus turned to affirmatively identifying the three occupants of the silver Jaguar. Id. As discussed in detail later in this opinion, Officer Ammons was "tasked with locating [Harvey's] identification." Id.

USA v. SAMAD MADIR HARVEY                                    1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS
_____

**B.**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The "[t]emporary detention of individuals during the stop of an automobile by police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." Whren v. United States, 517 U.S. 806, 809-10 (1996).

As such, the familiar "dual inquiry" of Terry v. Ohio, 392 U.S. 1 (1968), governs the legality of police conduct in routine traffic stops. United States v. Guijon-Ortiz, 660 F.3d 757, 764 (4th Cir. 2011) (citing United States v. Rusher, 966 F.2d 868, 875 (4th Cir. 1992)). In order to survive judicial scrutiny, the police officer's conduct during a traffic stop must be both "justified at its inception," Rusher, 966 F.2d at 875, and "sufficiently limited in scope and duration." Guijon-Ortiz, 660 F.3d at 764 (quoting Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion)).

**1.**

The government contends that Officer Murphy had reasonable, articulable suspicion to believe Billingsley was driving without

USA v. SAMAD MADIR HARVEY                                    1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS

"clearly visible" registration in violation of MCC § 351.03. As a
general rule, an automobile stop "must be justified by probable
cause or a reasonable suspicion, based on specific and articulable
facts, of unlawful conduct." United States v. Wilson, 205 F.3d 720,
722-23 (4th Cir. 2000). Although "a mere 'hunch'" is generally
insufficient, "a reasonable basis need not establish probable cause
and may well 'fall[] considerably short of satisfying a
preponderance of the evidence standard.'" United States v.
Massenburg, 654 F.3d 480, 485 (4th Cir. 2011) (quoting United
States v. Arvizu, 534 U.S. 266, 273 (2002)). An officer's
observation of a traffic violation, no matter how minor, provides
probable cause to stop the driver. United States v. Hassan El, 5
F.3d 726, 730 (4th Cir. 1993); see also United States v. Davis, 460
F. App'x 226, 230 (4th Cir. 2011) ("Traffic stops are justified at
their inception when officers observe a violation of the applicable
traffic laws." (citing United States v. Branch, 537 F.3d 328, 335
(4th Cir. 2008)).

     The Morgantown City Code section relied upon by Officer Murphy
states in pertinent part:

          Registration plates issued for vehicles required to be
          registered shall be attached to the rear thereof. Every
          registration plate shall at all times be securely
          fastened in a horizontal position to the vehicle for
          which it is issued so as to prevent the plate from

7

USA v. SAMAD MADIR HARVEY                                    1:12CR29

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORTS AND RECOMMENDATIONS

> swinging and at a height of not less than twelve inches
> from the ground, measuring from the bottom of such plate,
> in a place and position to be clearly visible and shall
> be maintained free from foreign materials and in a
> condition to be clearly legible.

MCC § 351.03; see also W. Va. Code § 17A-3-15. The Court notes that there is a paucity of authority concerning both this municipal provision and its statutory analogue; no federal or state court in West Virginia has elaborated on the contours of this particular traffic offense. Nevertheless, as the defendant points out in his objections, the plain meaning of Section 351.03 is clear: a registration plate, "at all times," must be displayed such that it is clearly visible and legible to an officer following at a safe distance. MCC § 351.03.

Here, in order to justify the stop of Billingsley's vehicle, Officer Murphy must have possessed "some minimal level of objective justification," United States v. Sokolow, 490 U.S. 1, 7 (1989), to believe that the temporary registration was not displayed "in a place and position to be clearly visible" pursuant to MCC § 351.03. Officer Murphy credibly testified that (1) the vehicle's registration was not in the "proper registration spot," i.e., the license plate well, where it "would normally go," (dkt. no. 44 at 17); (2) although he looked at the window of the car as well as the

8

USA v. SAMAD MADIR HARVEY                                    1:12CR29

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORTS AND RECOMMENDATIONS

license plate well prior to initiating the traffic stop, he did not

see any registration, id. at 16-17; and (3) he did not observe the

temporary registration card until "[a]fter the stop was conducted,"

id. at 16, when he turned on a "spotlight," id. at 18, and

"[a]pproached the vehicle" on foot. Id. at 16. Accordingly, as the

magistrate judge found, the "credible and uncontradicted testimony

in this case is that Officer Murphy did not see any registration

plate whatsoever on the vehicle prior to making the traffic stop."

(Dkt. No. 33 at 6). As Officer Murphy had an objectively reasonable

suspicion that the vehicle was operating in violation of MCC

§ 351.03, the traffic stop was "justified at its inception."

Rusher, 966 F.2d at 875.

### 2.

A police officer's actions during a lawfully initiated traffic

stop must be "reasonably related . . . to the circumstances that

justified the [stop]." Rusher, 966 F.2d at 875 (quoting Terry, 392

U.S. at 20). Accordingly, traffic stops must be duly limited in

both scope and duration. United States v. Digiovanni, 650 F.3d 498,

507 (4th Cir. 2011). Thus, to determine whether Officer Murphy's

stop was sufficiently limited, the Court must consider "whether the

police diligently pursued a means of investigation that was likely

USA v. SAMAD MADIR HARVEY                                    1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS
———————————————————————————————————————————————

to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." Guijon-Ortiz, 660 F.3d at 764. To prolong a stop "beyond the scope of a routine traffic stop," an officer "must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place." Branch, 537 F.3d at 336. This requires "either the driver's consent or a 'reasonable suspicion' that illegal activity is afoot." Id.

In the course of an ordinary traffic stop, an officer may justifiably detain "the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." Branch, 537 F.3d at 335. These "traditional incidents" include "requesting a driver's license and vehicle registration, running a computer check, and issuing a ticket." Digiovanni, 650 F.3d at 507 (citation omitted). An officer may also request identification from any of the vehicle's passengers, United States v. Soriano-Jarquin, 492 F.3d 495, 500 (4th Cir. 2007), and "order the driver as well as any passengers to get out of the car pending completion of the stop." United States v. McGee, 2:11-191, 2011 WL 5119528, at *3 (S.D. W. Va. Oct. 27, 2011) (citations omitted).

10

USA v. SAMAD MADIR HARVEY                                    1:12CR29

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORTS AND RECOMMENDATIONS

Although not framed as a specific objection, Harvey contends that the unobstructed display of his temporary registration card in the rear window of the vehicle did in fact comply with MCC § 351.03. If, as this argument implies, Officer Murphy was simply mistaken when he failed to observe the registration card prior to initiating the traffic stop, his reasonable mistake of fact would not undermine the conclusion that he had reasonable suspicion to execute the stop in the first instance. See, e.g., United States v. Mubdi, 691 F.3d 334, 342 (4th Cir. 2012) ("'[I]f an officer makes a traffic stop based on a mistake of fact, the only question is whether his mistake of fact was reasonable.'" (citation omitted)). Whether Officer Murphy subsequently observed a valid registration plate does, however, have potential implications as to the appropriate scope and duration of the traffic stop. See United States v. Ortiz, 669 F.3d 439, 444 (4th Cir. 2012) ("officers may not detain the vehicle for longer than necessary to accomplish the purposes of the stop" (citing Illinois v. Caballes, 543 U.S. 405, 407-408 (2005)).

The Tenth Circuit addressed this issue in United States v. McSwain, 29 F.3d 558 (1994). There, an officer stopped a vehicle that he suspected had an invalid temporary registration tag.

11

USA v. SAMAD MADIR HARVEY                                    1:12CR29

## MEMORANDUM OPINION AND ORDER
## ADOPTING REPORTS AND RECOMMENDATIONS

Although the officer realized shortly after making the stop that the vehicle's tag was indeed valid, he nevertheless proceeded to request the defendant's license and registration. Id. at 560. According to the Tenth Circuit, the officer violated the Fourth Amendment by doing so because his "reasonable suspicion regarding the validity of [the defendant's] temporary registration sticker was completely dispelled prior to the time he questioned [the defendant] and requested documentation." Id. at 561 (emphasis in original). Since the officer did not have "objectively reasonable articulable suspicion that illegal activity had occurred or was occurring," his actions "exceeded the limits of a lawful investigative detention and violated the Fourth Amendment." Id. at 561–62 (citation omitted).[2]

The Fourth Circuit has not considered whether an officer must end a traffic stop without requesting a driver's license and registration when the officer's reasonable suspicion has been completely dispelled. Nevertheless, such a rule is inapposite under

---

[2] The Tenth Circuit noted, however, that it would not offend the Fourth Amendment if, "[a]s a matter of courtesy," the officer approached the driver to explain "the reason for the initial detention." McSwain, 29 F.3d at 562. This "brief encounter between an officer and driver . . . might independently give rise to facts creating reasonable suspicion of criminal activity, thus warranting further investigation." United States v. Edgerton, 438 F.3d 1043, 1051 (10th Cir. 2006); accord United States v. Jenkins, 452 F.3d 207, 212–13 (2d Cir. 2006).

USA v. SAMAD MADIR HARVEY                                    1:12CR29

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORTS AND RECOMMENDATIONS

the facts of this case. As the magistrate judge found, after Officer Murphy approached the vehicle and verified the existence of the registration card, it was objectively reasonable for him to believe that its display violated MCC § 351.03.

Turning to the plain language of that provision, the Court bears in mind that, under West Virginia's rules of statutory interpretation,

> [s]tatutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in pari materia to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.

Syl. Pt. 6, Community Antenna Serv., Inc. v. Charter Commun. VI, LLC, 712 S.E.2d 504 (W. Va. 2011) (quoting Syl. Pt. 5, Fruehauf Corp. v. Huntington Moving & Storage Co., 217 S.E.2d 907 (W. Va. 1975)).

Pursuant to the plain language of MCC § 351.03, "[e]very registration plate" must be clearly visible and clearly legible "at all times," with no exception for the nighttime hours. MCC § 351.03. The MCC itself cross-references this Article with MCC § 345.05, which dictates that the registration plate be illuminated

13

USA v. SAMAD MADIR HARVEY                                1:12CR29

## MEMORANDUM OPINION AND ORDER
### ADOPTING REPORTS AND RECOMMENDATIONS

and thus legible even in the dark: "[e]ither a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear." See also W. Va. Code § 17C-15-5. The defendant has identified no exception to this requirement relating to temporary registration tags. Cf. United States v. Foster, 65 F. App'x 41, 44 (6th Cir. 2003) ("the absence of a provision exempting temporary tags from the general applicability of [the statute] supports the proposition that they are subject to the same illumination requirements as are permanent plates").

In this case, Officer Murphy testified that he observed Billingsley's silver Jaguar driving down the street at night without visible registration where it "would normally go," i.e., the illuminated license plate well. (Dkt. No. 44 at 17). He further testified that he could not see the registration in the window of the car prior to conducting the traffic stop, even though he looked. (Dkt. No. 44 at 17). Finally, he maintained that he "could not see that registration [in the rear window] as the vehicle passed me when I was doing my enforcement." (Dkt. No. 44 at 16). The defendant has not pointed to anything implausible or

14

USA v. SAMAD MADIR HARVEY                                      1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS

unreasonable in the officer's inability to see the registration card in the rear window, unilluminated, at night.

The Court finds that MCC § 345.05 serves to assure that MCC § 351.03 is given its appropriate reach. When the two provisions are considered in pari materia, it is apparent that mere unobstruction, standing alone, is not enough to render a registration plate "clearly visible" or "clearly legible" during the nighttime hours.[3] Thus, in the circumstances of this case, the placement of the registration in the rear window of the vehicle rendered it not "clearly visible" under MCC § 351.03, and Officer Murphy was justified in pursuing the normal incidents of the traffic stop. Branch, 537 F.3d at 335. Consequently, upon Officer Trump's detection of marijuana, Officer Murphy was authorized to expand the scope and duration of the stop. United States v. Rooks, 596 F.3d 204, 210 (4th Cir. 2010).

---

[3] Cf. United States. v. Lucas, 322 F. App'x 326, 328 (4th Cir. 2009) ("[T]he display of the registration tag was unlawful under North Carolina law, as the tag was not properly illuminated under § 20-129(d) of the North Carolina Code. Accordingly, the fact that the tag was displayed in the rear window in a manner in which it was unreadable provided the officer with probable cause to stop Lucas' vehicle."); United States v. Dycus, 151 Fed. App'x 457, 460-61 (6th Cir. 2005) (Under Tennessee law, a registration plate to be clearly visible at all times must be illuminated); United States v. Foster, 65 F. App'x 41, at *3 (6th Cir. 2003) (Illinois temporary license tag posted in rear windshield violated Kentucky traffic code requiring license plates to be kept legible and illuminated). But see Edgerton, 438 F.3d at 1051 (refusing to find temporary tag not "clearly visible" simply because "it was dark out").

USA v. SAMAD MADIR HARVEY                                    1:12CR29

## MEMORANDUM OPINION AND ORDER
### ADOPTING REPORTS AND RECOMMENDATIONS

### IV.

Having determined that the initial traffic stop was valid, the Court turns next to Harvey's second motion to suppress (dkt. no. 21), in which he contends there is no evidence that he consented to Officer Ammons' warrantless entry into his residence subsequent to the traffic stop. As such, he argues, any evidence obtained as a result of that search must be suppressed. In his R&R issued on September 28, 2012, Magistrate Judge Kaull agreed, recommending that the Court grant the defendant's motion and suppress any contraband seized pursuant to the later warrant obtained as a result of that illegal predicate search. (Dkt. No. 35 at 24). The government, which has restricted its argument solely to the issue of implied consent, objects that "the circumstances of defendant's case demonstrates [sic] he consented to the officer entering his residence with him." (Dkt. No. 47 at 10).

### A.

At some point after the officers searched the interior of the silver Jaguar on December 16, 2010, Officer Ammons asked Harvey, who was detained but not under arrest, for his name and date of birth. Although Harvey maintains that he provided accurate information in response to this inquiry, (dkt. no. 44 at 54), it is

16

USA v. SAMAD MADIR HARVEY                                      1:12CR29

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORTS AND RECOMMENDATIONS

undisputed that the 911 center had "no return" for the name the
officer provided. Id. at 46. Officer Ammons testified that, when he
informed the defendant that the center was unable to verify his
information, Harvey stated, "My identification is in the house."
(Dkt. No. 44 at 46). Harvey, with a slightly different
recollection, testified that he overheard and corrected the
fallacious pronunciation of "Harvey" that Officer Ammons provided
the dispatcher, at which point the officer became "agitated" and
asked, "[W]hich one is it, Harvey or Harding[?]" Id. at 51. Harvey
testified that he responded, "My ID is in my crib," id. at 51, and
"left it just like that." Id. at 58.

     According to Officer Ammons, after this initial exchange,
Harvey "said he could retrieve [the identification]. And, of
course, I would have to escort him in to get that, because I'm not
letting anybody walk in a house to come back out . . . so I
escorted him inside." Id. at 28. Harvey, however, testified that,
"[a]fter I replied ['My ID is in my crib']," id. at 58, Officer
Ammons "just told me, Well, I'm going to escort you inside your
house, and you're going to give me your I.D. . . . I didn't
question him. I didn't say nothing. I just did what he told me to
do." Id. at 52.

USA v. SAMAD MADIR HARVEY                                      1:12CR29

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORTS AND RECOMMENDATIONS

Notably, although Officer Ammons intimated at one point that he had told Harvey he would escort him into the residence,[4] id. at 28, he later testified that he could not recall what, if anything, he had actually said to the defendant prior to his entry into the home. Id. at 47-48. If he "would have explained anything," Officer Ammons testified, "it would have been -- if [Harvey's] going in the house, then I'm going with him, period." Id. at 47. Officer Ammons was unequivocal, however, that he "did not ask [Harvey] if [he] could go in the home with him," and that Harvey did not "tell [him] that [he] could go with him in the home." Id. at 48. "But," Officer Ammons emphasized, "he never told me I couldn't." Id. For his part, Harvey maintains that Officer Ammons stated, "I'm going to escort you inside of your residence, and you're going to give me your I.D." Id. at 57. When queried as to whether he had in fact made such a statement, Officer Ammons replied, "Not that I recall." Id. at 47.

---

[4] In response to the government's query as to whether he had told the defendant that he would accompany him into the house, Officer Ammons replied, "Yes, he was not handcuffed, and I was walking with him. We walked upstairs and walked into the house. He never once stopped and said, you know, you can't come in or anything like that." (Dkt. No. 44 at 28). After due consideration of the credibility of the witnesses and the "consistency and inconsistencies" in their testimony, Magistrate Judge Kaull found that Officer Ammons "held a preconcieved view that he would escort [Harvey] into the house even though he did not express that to Defendant at any time before entry." (Dkt. No. 35 at 22).

18

USA v. SAMAD MADIR HARVEY                                    1:12CR29

## MEMORANDUM OPINION AND ORDER
### ADOPTING REPORTS AND RECOMMENDATIONS

Harvey testified that Officer Ammons walked into the residence first, ahead of him, while another officer stood at the door. Id. at 53. After verifying that Harvey was still "detained" and "not free to leave" at this point, id. at 46-47, Officer Ammons stated that he walked "with" Harvey into the house, id. at 28, and that, once inside, the defendant walked into his actual bedroom "in front" and "on his own." Id. at 30.

Once the pair were inside the defendant's bedroom, the officer observed Harvey open a drawer and then "tr[y] to shield what he was doing with his body." Id. at 30. As described by the officer, Harvey pantomimed retrieving his identification from the drawer, although he in fact simply pulled it from the pocket of his pants. Id. at 31.[5] Officer Ammons then observed, in plain view, an open "Rice-A-Roni box on the table right beside where that drawer was" with what looked to be "the packaging of heroin" sticking out of it. Id. at 31. He also "smell[ed] green, or raw marijuana," at which point he decided to clear the home and seek a search warrant. Id. at 33.

After exiting the residence, Officer Ammons relayed his observations to the Mon Valley Task Force, id. at 34, and Officer

---

[5] The defendant denies this version of events. Id. at 56.

USA v. SAMAD MADIR HARVEY                                    1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS

Dave Helms used his statements to prepare a probable cause affidavit in support of a search warrant for the home. Id. Officer Ammons went on to check the name on Harvey's identification with the 911 center and, after it came back with an outstanding warrant, he placed Harvey under arrest. Id. Subsequent to the execution of the search warrant, law enforcement officials recovered a .22 caliber pistol from the drawer in Harvey's bedroom. Id. at 35.

**B.**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. As a general rule, then, "searches and seizures inside a home without a warrant are presumptively unreasonable," Kentucky v. King, --- U.S. ----, 131 S. Ct. 1849, 1856 (2011) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)), subject to "a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Voluntary consent operates as one of the principal exceptions to the Fourth Amendment's prohibition against warrantless searches. United States v. Neely, 564 F.3d 346, 350 (4th Cir. 2009) (per curiam); see also Florida v. Jimeno, 500 U.S. 248, 250-51 (1991) ("[I]t is no doubt

20

USA v. SAMAD MADIR HARVEY                          1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS

reasonable for the police to conduct a search once they have been permitted to do so."). Consent need not be expressed in a particular form, but "may be inferred from actions as well as words." United States v. Hylton, 349 F.3d 781, 786 (4th Cir. 2003).

When the government seeks to justify a warrantless search based on consent, it bears the burden of proving, by a preponderance of the evidence, that it obtained knowing and voluntary consent. United States v. Toyer, 414 F. App'x 584, 588 (4th Cir. 2011) (citing United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007)). This "burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." Bumper v. North Carolina, 391 U.S. 543, 548–49 (1968). Rather, the standard is one of "'objective' reasonableness - what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Jimeno, 500 U.S. at 251 (citations omitted); Neeley, 564 F.3d at 350.

Where the purported consent is implied, as opposed to explicit, the government's burden "'is heavier . . . since consent is not lightly to be inferred.'" Neely, 564 F.3d at 350 (quoting United States v. Impink, 728 F.2d 1228, 1232 (9th Cir. 1984)). Whether a defendant gave voluntary consent is a question of fact,

USA v. SAMAD MADIR HARVEY                                    1:12CR29

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORTS AND RECOMMENDATIONS

United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996), which the Court "determine[s] by the totality of all the circumstances." United States v. Mendenhall, 446 U.S. 544, 557 (1980) (internal citations omitted).

The existence of consent and the voluntariness of consent are "related, but analytically distinct" issues. United States v. Carter, 300 F.3d 415, 423 (4th Cir. 2002). The Court looks first to whether the defendant's words or conduct could reasonably be interpreted as providing consent. See United States v. Scott, No. 1:10-48, 2010 WL 5067906, at *4 (M.D.N.C. Dec. 6, 2010); see also United States v. Freeman, 482 F.3d 829, 831 (5th Cir. 2007) ("First, as a threshold matter, the government must demonstrate that the defendant did consent."); United States v. Griffin, 530 F.2d 739, 743 (7th Cir. 1976) (same). Once the government establishes the defendant's consent, the Court must determine whether that consent was voluntary. Scott, 2010 WL 5067906, at *5; Freeman, 482 F.3d at 832; Griffin, 530 F.2d at 743.

### C.

In its objections to the R&R, the government argues that the defendant implicitly consented to Officer Ammons' warrantless search by

USA v. SAMAD MADIR HARVEY                                    1:12CR29

## MEMORANDUM OPINION AND ORDER
### ADOPTING REPORTS AND RECOMMENDATIONS

>    (1) offering to obtain the license from his residence
> knowing that he would be accompanied by the officer, (2)
> not expressly stating that he did not want the officer in
> his residence, and (3) not producing his driver's license
> establishing his identity which would have ended the
> reason for entering the residence.

(Dkt. No. 47 at 10).

### 1.

As a threshold matter, the government's first argument, that

Harvey "offer[ed] to retrieve his identification" from the

residence with the "know[ledge] that he would be accompanied by the

officer," (dkt. no. 47 at 10), is neither factually supported by

the evidentiary record nor indicative of implied consent. There is

no question that consent to search can be implied from a person's

"words, gestures, or conduct." United States v. Moreland, 437 F.3d

424, 429 (4th Cir. 2006); see also Hylton, 349 F.3d at 786.

Although consent must constitute more than mere acquiescence to

apparent lawful authority, Lattimore, 87 F.3d at 652, "'[m]agic

words' (such as 'yes') are not necessary to evince consent because

'the key inquiry focuses on what the typical reasonable person

would have understood by the exchange between the officer and the

suspect.'" Guerrero v. Deane, 750 F.Supp.2d 631, 646-47 (E.D. Va.

2010) (quoting United States v. Bynum, 125 F.Supp.2d 772, 783 (E.D.

Va. 2000), rev'd on other grounds, 293 F.3d 192 (4th Cir. 2002)).

USA v. SAMAD MADIR HARVEY                                    1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS

Accordingly, the key inquiry here is simply whether, based on the totality of the circumstances, Harvey's conduct "would have caused a reasonable person to believe that he consented." United States v. Castellanos, 518 F.3d 965, 969 (8th Cir. 2008) (citation omitted).

The undisputed testimony is that, in response to Officer Ammons' query regarding his actual name, Harvey stated either "My identification is in the house" or "My I.D. is in my crib." (Dkt. No. 44 at 46, 51). According to Officer Ammons, Harvey then followed up with a statement along the lines of, "he could retrieve [the identification]." Id. at 28. The officer testified that he could not recall whether he explained to Harvey that he would accompany him, although he stated that "[i]f I would have explained anything, it would have been -- if [Harvey's] going in the house, then I'm going with him, period." Id. at 48.

Officer Ammons did not elaborate as to what happened next, other than that "[he] escorted [Harvey] in the house." Id. at 46; see also id. at 28 ("I escorted him inside."). Harvey, however, insists that the officer then directed, "I'm going to escort you inside of your residence, and you're going to give me your I.D," id. at 57, which Officer Ammons could not "recall." (Dkt. No. 44 at 47).

24

USA v. SAMAD MADIR HARVEY                                  1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS

Under the circumstances of this case, no reasonable person could have interpreted Harvey's simple statement of fact regarding the location of his identification as an "offer" to permit an officer to accompany him into the home in order to retrieve that identification. See, e.g., United States v. Cole, 195 F.R.D. 627, 632 (N.D. Ind. 2000) (noting parenthetically that "statement of location of an object does not in itself indicate consent for police to search for object" (citing United States v. Zertuche-Tobias, 953 F.Supp. 803, 827 (S.D. Tex. 1996)). Nor has the government identified any other statement, gesture, or other conduct by Harvey which could have implied consent.[6]

Inasmuch as Officer Ammons testified that Harvey said "he could retrieve" the identification, (dkt. no. 44 at 28 (emphasis added)), which the defendant disputes, the Court finds that this statement, devoid as it is of any contextual elaboration, is just as likely to represent an inquiry as to whether the officer would require him to retrieve the identification as it is an "offer" to obtain it. In the absence of any further dialogue, no reasonable

---

[6] The Court notes that there is no testimony, for example, that Harvey made the first movement towards the home – the sole testimony offered by Officer Ammons is that he "escort[ed]" and walked "with" Harvey into the house. Id. at 28. Again, Harvey elaborates that he simply followed the officer to the house. Id. at 53.

USA v. SAMAD MADIR HARVEY                                    1:12CR29

## MEMORANDUM OPINION AND ORDER
### ADOPTING REPORTS AND RECOMMENDATIONS

officer could interpret such a statement as an invitation to enter the residence in order to retrieve the identification.

Moreover, there is no evidence in the record of any statement, gesture, or other conduct by Officer Ammons that could be reasonably construed as a request for consent. Indeed, his most definitive testimony was when he averred that he "did not ask [Harvey] if [he] could go in the home with him," and that Harvey did not "tell [him] that [he] could go with him in the home." Id. at 48. This is particularly noteworthy in light of the fact that a request for permission, in some capacity, is often seen as a necessary predicate for reasonably inferring implied consent. See, e.g., United States v. Jaras, 86 F.3d 383, 390 (5th Cir. 1996) (consent cannot reasonably be implied from a suspect's silence or failure to object unless the officer expressly or impliedly asked for consent to search); United States v. Shaibu, 920 F.2d 1423, 1427 (9th Cir. 1990) (an affirmative act in response to a police request was needed in order to infer implied consent); Guerrero, 750 F.Supp.2d at 646-47 ("In examining the totality of the circumstances to determine whether a reasonable officer would interpret a gesture or conduct as consent, it is necessary to consider the question posed by, and the actions of, the law

26

USA v. SAMAD MADIR HARVEY                                    1:12CR29

## MEMORANDUM OPINION AND ORDER
### ADOPTING REPORTS AND RECOMMENDATIONS

enforcement officers to which the defendant's non-verbal conduct was a response." (quoting <u>Bynum</u>, 125 F.Supp.2d at 783)).

**2.**

In the absence of any gestures or conduct that could reasonably be construed as consent, Harvey's implied consent would have to be premised exclusively on his silence and lack of resistance to Officer Ammons' actions. Notably, the government has cited to no case stating that consent to search can, in the first instance, be inferred solely from the silence of a defendant who was never asked. Rather, the weight of authority holds that "'the government may not show consent to enter from the defendant's failure to object to the entry. To do so would be to justify entry by consent and consent by entry.'" <u>United State v. Gonzalez</u>, 71 F.3d 819, 830 (11th Cir. 1996) (quoting <u>Shaibu</u>, 920 F.2d at 1427), <u>overruled on other grounds by Arizona v. Gant</u>, 556 U.S. 332 (2009); <u>see also United States v. Little</u>, 431 F. App'x 417, 420-421, 2011 WL 2518674, *3 (6th Cir. 2011) (no implied consent where officer "merely followed Defendant into the house when Defendant went in to get additional clothing"); <u>Roe v. Texas Dept. of Protective and Regulatory Services</u>, 299 F.3d 395, 402 (5th Cir. 2002) ("Silence or passivity cannot form the basis for consent to enter.").

USA v. SAMAD MADIR HARVEY                                    1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS

Here, the sole evidence is that, after the defendant mentioned the location of his identification, he was either led or escorted into his home by law enforcement. It is undisputed that he was "detained" and "not free to leave" pursuant to the ongoing investigation centered around the original traffic stop. (Dkt. No. 44 at 46-47). There is no evidence that Harvey said or did anything which would give rise to a reasonable inference of consent, or that Officer Ammons said or did anything which would give rise to a reasonable inference that consent was requested. A reasonable person under these circumstances would have believed that the Officer was legally authorized to either lead or escort him into the home.

As such, the Court concludes that, under the circumstances of this case, Harvey's silence and lack of resistence in response to Officer Ammons' accompaniment evinces, at most, a mere acquiescence to a show of lawful authority. See, e.g., Cole, 195 F.R.D. at 634 (suspect told that police "needed" his identification simply acquiesced to lawful authority); see also United States v. Vasquez, 638 F.2d 507, 526-27 (2d Cir. 1980) (when police told defendant they were going to take him home to arrest his wife, defendant did not consent to entry, as the matter was "presented to him as a fait

28

USA v. SAMAD MADIR HARVEY                                      1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS

accompli"); <u>United States v. Mapp</u>, 476 F.2d 67, 78 (2d Cir. 1973) (when police told woman at her apartment that "we want the package" consent was not voluntary, in part because this "was an outright demand—without ifs, ands or buts"); <u>United States v. Gwinn</u>, 46 F.Supp.2d 479, 484 (S.D. W. Va. 1999) (defendant's "mere acquiescence to the search was not enough to constitute implied consent").

### 3.

The final prong of the government's totality-of-the-circumstances argument is that Harvey consented to the search by "not producing his driver's license establishing his identity." (Dkt. No. 47 at 12). Whether consent can be implied in the first instance, however, is an objective inquiry. <u>See</u> <u>Brigham City v. Stuart</u>, 547 U.S. 398, 403 (2006) ("An action is 'reasonable' under the Fourth Amendment . . . as long as the circumstances, viewed objectively, justify the action." (citations omitted)); <u>see also</u> <u>United States v. Smith</u>, 395 F.3d 516, 519 (4th Cir. 2005) ("[T]he Fourth Amendment does not even require that the suspect actually consent to a government search; factual determinations by the government, such as the presence of consent, must be reasonable, but are not required always to be correct." (emphasis omitted)).

29

USA v. SAMAD MADIR HARVEY                                    1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS

"The particular personal traits or subjective state of mind of the defendant are irrelevant to the objective 'reasonable person' test . . . other than to the extent that they may have been known to the officer and influenced his conduct." United States v. Hill, 199 F.3d 1143, 1149 (10th Cir. 1999) (citations omitted). Here, there is no indication that Officer Ammons was aware of any deceptive conduct by Harvey prior to their entry into the residence. As such, this factor does not weigh in the determination of the existence of implied consent.[7]

**4.**

The evidentiary record in this case is undeniably scant. The government only called one witness, Officer Ammons, to testify as to the circumstances surrounding his entry into Harvey's residence. To the extent that this testimony left gaps in the record, they can only be filled by Harvey, the sole testifying witness for the defense. After closely examining the evidentiary record and conducting a de novo review of the issues presented, the Court agrees with the conclusion of the magistrate judge that the government "has not met its burden of proving by a preponderance of

---

[7] Even if the Court were to consider such evidence, any arguably duplicitous conduct by Harvey is only one factor, and it is outweighed by the dearth of evidence already discussed.

USA v. SAMAD MADIR HARVEY                                    1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS
_____

the evidence that [Harvey] voluntarily consented to Officer Ammons

entering his residence." (Dkt. No. 35 at 22).

### D.

    The government argues that, in the alternative, the Leon

good-faith exception to the exclusionary rule should permit

admission of the seized evidence. United States v. Leon, 468 U.S.

897 (1984). The Fourth Circuit, however, has recognized that the

good-faith exception does not apply where the search warrant was

prompted by an unlawful predicate search. United States v. Mowatt,

513 F.3d 395, 405 (4th Cir. 2008), abrogated on other grounds,

Kentucky v. King, --- U.S. ----, 131 S.Ct. 1849 (2011); see also

United States v. Gray, 302 F.Supp.2d 646, 654 (S.D. W. Va. 2004).

The Fourth Amendment violation in this case occurred during Officer

Ammons' initial, prewarrant entry into Harvey's home. Officer Helms

then obtained a search warrant on the basis of the observations

Officer Ammons made during the unlawful entry.[8] As such, the Leon

good-faith exception is inapplicable.

_____

[8]The government did not challenge the magistrate judge's conclusion that
the warrant would have lacked a basis in probable cause in the absence
of the information gleaned from the unlawful predicate search. The Court
finds the magistrate judge's analysis in this regard to be well-founded
and correct. See (Dkt. No. 35 at 22-23).

USA v. SAMAD MADIR HARVEY                                    1:12CR29

MEMORANDUM OPINION AND ORDER
ADOPTING REPORTS AND RECOMMENDATIONS

The Court recognizes that "suppression is not an automatic consequence of a Fourth Amendment violation," and that the "question turns on the culpability of the police and the potential to deter wrongful police conduct." Herring v. United States, 555 U.S. 135, 137 (2009). The facts of this case, however, justify the application of the exclusionary rule to suppress the evidence seized. Here, "'a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" Id. at 141 (citation omitted). This is not a case of "isolated negligence" that was otherwise "attenuated" from the unlawful search. Id. at 135. Rather, the officers' conduct in this case is capable of "'meaningfu[l]' deterrence" and culpable enough to be "worth the price paid by the justice system" of the exclusion of the evidence. Id. at 144. To find otherwise would be to permit the "'physical entry of the home,'" which is the "'chief evil against which the wording of the Fourth Amendment is directed.'" Welsh v. Wisconsin, 466 U.S. 740, 748 (1984) (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)).

**V.**

In conclusion, for the reasons discussed, the Court:

USA v. SAMAD MADIR HARVEY                                    1:12CR29

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORTS AND RECOMMENDATIONS**

1.   **ADOPTS** the magistrate judge's reports and recommendations (dkt. nos. 33, 35);

2.   **DENIES** the first motion to suppress (dkt. no. 20);

3.   **GRANTS** the second motion to suppress (dkt. no. 21); and

4.   **SUPPRESSES** the .22 caliber firearm in this case.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: October 25, 2012.

                                   /s/ Irene M. Keeley
                                   IRENE M. KEELEY
                                   UNITED STATES DISTRICT JUDGE

33